579 So.2d 1261 (1991)
Virgil WEST and Wife, Janetta F. West
v.
Herbert L. BREWER.
No. 89-CA-1349.
Supreme Court of Mississippi.
April 24, 1991.
Dudley C. Carr, Carr & Goodman, Tupelo, for appellant.
Gary L. Carnathan, Carnathan & Malski, Tupelo, for appellee.
Before DAN M. LEE, P.J., and PRATHER and BANKS, JJ.
PRATHER, Justice, for the court:

I. INTRODUCTION
In this appeal, Virgil and Janetta West are seeking to de-possess Herbert Brewer of a small strip of commercial property located in Verona, Mississippi. The Wests cite the law pertaining to adverse possession as their basis for laying claim to Brewer's property. The chancellor concluded that the Wests failed to establish the elements of adverse possession. This Court affirms in part, and reverses and renders in part.

A. The Facts
On December 14, 1988, Brewer filed a complaint in the Lee County Chancery Court against the Wests to quiet title to the following property:
Commencing at the Northeast corner of the SE 1/4 of the NE 1/4 of Section 24, Township 10, Range 5 East and run South along the center line of U.S. Highway 45 South for 665.5 feet; thence run South 89 degrees 26 minutes West for 40 feet to the West right of way line of said highway for a point of beginning. Thence run South 89 degrees 26 minutes West along the South line of Camfield Circle for 150 feet; thence run South 121.5 feet; thence run North 89 degrees 26 minutes East for 150 feet to the West right of way line of said highway; thence run North 121.5 feet along said right of way to the point of beginning.
The Wests filed an answer and asserted that they should be entitled to the property *1262 pursuant to the doctrine of adverse possession.
At trial, Brewer introduced various deeds to establish his chain of title to the property. The Wests presented the testimony of various witnesses to establish the elements of adverse possession, and Brewer countered by presenting his own witnesses whose testimony contradicted the testimony of the Wests' witnesses.
Upon completion of the trial, the chancellor visited the disputed property. He then rendered his "Findings of Fact and Conclusions of Law":
Upon review of the evidence, exhibits, and applicable law, the Court concludes that the plaintiff, Herbert Brewer is the record title holder of the above described property and he owns the same in fee simple.
The plaintiff, Herbert Brewer, introduced deeds into evidence which established his chain of title to the subject property. The defendants, Virgil West and Janetta F. West, case consisted entirely of evidence for the claim of adverse possession. Fundamentally, the elements necessary to establish ownership of property through adverse possession are as follows: possession must be under claim of right and must be actual, open, notorious and visible, exclusive, continuous, and uninterrupted for ten years. Pieper v. Pontiff, 513 So.2d 591 (Miss. 1987).
Simply stated the defendants failed to prove all of the above elements necessary to establish ownership by adverse possession.
Therefore, the Court is of the opinion and so finds and orders that the plaintiff, Herbert Brewer, is the fee simple owner of the above described property. The defendants, Virgil West and Janetta F. West shall not be required to relocate their building, but said building will be allowed to remain in its present location. Further, the defendants shall have the right to allow the water to drain from their building onto the plaintiff's property. However, the defendants, Virgil West and Janetta F. West, shall be required to remove the adjacent concrete that lies between the plaintiff's building and that building belonging to the defendants. The defendants shall remove said concrete within ninety (90) days from the date of this opinion.
Vol. I, at 21-22.
The Wests appealed and presented two issues:
1. "Did the title to the land in controversy in this cause ripen by adverse possession in the Appellants prior to any attempted transfer of title by others to the Appellee?"
2. "Did either ... Deed from Earnest L. Daniel or... from Reese Senter transfer any title to the Appellee so as to make him the owner of said land?"

II. ANALYSIS

A. Issue # 1

1.
One who asserts a claim of adverse possession must establish six elements by clear and convincing evidence. The claimant must prove that his possession or occupancy of the property was: (1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful. Stallings v. Bailey, 558 So.2d 858, 860 (Miss. 1990) (citing numerous cases).

2.

(a)
To establish the first element  under claim of ownership  the Wests presented the testimony of Travis Little. Little testified that, when he acquired the West lot from then-owner Reese Senter in 1971, Senter "told him" that the lot's boundary line extended to "power poles" located on the eastern-most edge of the disputed strip of property. See Appendix, infra. Virgil West then testified that, when he acquired the West lot from Little in 1977, Little "told him" the same thing that Senter had told Little in 1971. That is, *1263 Little told West that the West lot extended to the power poles.
Brewer countered that the description contained in the deeds to the West lot does not refer to and include the disputed property and that, therefore, both Little and West have reached erroneous conclusions about the dimensions of their property.

(b)
To establish the three elements  actual or hostile; open, notorious, and visible; and continuous and uninterrupted for a period of ten years  the Wests presented the testimony of various witnesses. Little testified that in 1972, he built on the West lot a large metal warehouse-like structure which extended five feet onto the disputed property. See Appendix, infra. This structure "housed" Little's major-appliance-repair business. Little testified that, from 1972 to 1977, he used the disputed property to load and unload appliances through a "double garage overhead door" located on the east side of the structure. "On a regular basis," delivery trucks would drive through the disputed property to a "concrete slab" or ramp which ran from near the power poles and up to the overhead door. Little added that he built the ramp.
West testified that, after acquiring the West lot from Little in 1977, he used the metal structure until 1983 to "house" his "foam and mattress" business. West added that, during these years, he used the disputed property to reach the overhead door on the east side of the structure to load and unload trucks.
In 1983, a fire destroyed the structure, which West rebuilt and leased to tenants who continue to use the disputed property for loading and unloading trucks.
Brewer also presented the testimony of various witnesses for support. Peggy Hamilton worked in a chiropractor's office from 1970 to 1984 across the street within view of the structure and the disputed property. Hamilton testified that, during these fourteen years, she never saw Little or West use the disputed property. Moreover, Hamilton testified that the structure's east side did not have an overhead door or any kind of door or entrance until after the fire in 1983. In other words, she seemed to contend that Little and West fictionalized the overhead door through which they loaded and unloaded trucks.
Hamilton's testimony was corroborated by two other witnesses  his co-worker, Harvey Rabinowitz, and employer, Tom Morgan.[1] In short, these witnesses contended that loading and unloading was conducted on the West side of the structure.

(c)
With regard to the fifth element  exclusive use  the Wests claimed that Little, they and their tenants were the only individuals who used the disputed property from 1972 to date.
Brewer, on the other hand, presented the testimony of Richard Landers  an employee of one of Brewer's East-lot tenants, Colonial Cleaners  to counter the Wests' claim that they used the disputed property exclusively. Specifically, Landers testified that, from around 1978 to date, he has used the disputed property to load and unload trucks at the westside entrance of Colonial Cleaners.
Phil Wheeler, who once worked for Humpty Dumpty Convenience Food Store which was located on the East lot from 1974 to 1986, testified that the disputed property was occasionally used for deliveries at the store's back entrance.

(d)
Finally, no dispute seems to exist with regard to the sixth element  peaceful use.

(e)
In sum, the Wests and Brewer presented conflicting testimony. Thus, the issue here is a factual one. See Stallings, 558 So.2d at 861.

3.
"The credibility of the witnesses and the weight of their testimony, as well as the interpretation of evidence where it is capable of more than one reasonable interpretation, are primarily for the chancellor as *1264 trier of facts." Polk v. Polk, 559 So.2d 1048, 1049 (Miss. 1990); accord Tinnin v. First United Bank of Miss., 570 So.2d 1193, 1194 (Miss. 1990). Of utmost import, this Court is reminded that it is bound by the "severely limited substantial evidence/manifest error standard of review." Stallings v. Bailey, 558 So.2d 858, 861 (Miss. 1990) (citing cases).
Applying the law to the facts, this Court holds that the Wests failed, for the most part, to prove the existence of a manifest error in the chancellor's "Findings of Fact and Conclusions of Law." In other words, the chancellor properly found that the Wests did not clearly and convincingly prove they adversely possessed the disputed property  with the exception of the 5' X 80.4' strip of property on which the warehouse sits. See Appendix, infra.
The testimony of Wests' witnesses did not sufficiently outweigh the testimony of Brewer's witnesses, who contradicted the Wests' claim of exclusive use of the property. However, no one disputes that the 5' X 80.4' strip of property on which the warehouse sits has been used exclusively during at least a ten-year period. Therefore, this Court holds that the chancellor manifestly erred in failing to find that title to this 5' X 80.4' strip is now vested in the Wests.
In sum, this Court affirms the chancellor's decision with the exception of the 5' X 80.4' strip on which the warehouse sits, which the Wests by virtue of adverse possession now hold title.

B. Issue # 2
The Wests ask whether the various conveyances of property between Senter, Daniel, and Brewer were ineffective since they (the Wests) had acquired the property through adverse possession prior to the conveyances.
As discussed, the Wests failed to sufficiently prove all the elements of adverse possession. Therefore, to the extent enunciated in the preceding section, this issue is devoid of merit.

III. CONCLUSION
Based on the foregoing reasons, this Court affirms in part and reverses and renders in part.
AFFIRMED IN PART; REVERSED AND RENDERED IN PART AS TO THE 5' X 80.4' STRIP ON WHICH THE WAREHOUSE SITS.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
*1265 
NOTES
[1] Morgan's testimony was not actually presented but was stipulated to by the parties.