# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CT-00326-SCT

*DEMETRA P. MYERS*

*v.*

*MARK E. MYERS*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 02/18/2002 |
| TRIAL JUDGE: | HON. WILLIAM G. WILLARD, JR. |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | PHILIP MANSOUR, JR. |
| ATTORNEY FOR APPELLEE: | LINDSEY C. MEADOR |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART; THE JUDGMENT OF THE TRIAL COURT IS REINSTATED AND AFFIRMED - 06/24/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     On February 18, 2002, the Bolivar County Chancery Court ordered Mark E. Myers to pay his wife, Demetra P. Myers, separate maintenance in the amount of $600 per month along with other expenses. The chancery court also ordered the parties to sell their marital home and use the proceeds from the sale to purchase a more affordable home which would be jointly titled in the names of both parties. On appeal, the Court of Appeals held that the chancellor lacked the authority to order a partition of the marital home because neither party had made such a request. Finding that Mark requested the marital home be

partitioned in his initial complaint for divorce and later at a subsequent hearing, we affirm in part and reverse in part the judgment of the Court of Appeals and reinstate and affirm the judgment of the Chancery Court of the Second Judicial District of Bolivar County.

## FACTS[1]

Mark and Demetra were married on November 22, 1987, and lived together until they separated April 6, 2000. One child, a daughter, was born of the marriage May 14, 1989.

On May 24, 2000, Mark filed a complaint for divorce on the grounds of habitual, cruel and inhuman treatment. Alternatively, Mark sought an irreconcilable differences divorce. He also petitioned the court to sell the marital home when the child reached the age of twenty-one. Demetra then filed an answer denying Mark's grounds for a divorce and requested a separate maintenance order based on Mark's desertion and adultery.

The parties' assets included a recently built 4,700 square foot home on five acres of land just outside Boyle, Mississippi, in Bolivar County. This home was subject to a $200,000 mortgage with monthly payments of $1,767. The mortgage had almost gone into foreclosure on two separate occasions. In addition to the marital home, the parties owned eight acres surrounding the home, a mobile home, a pontoon boat, a four wheeler, a duck boat and ten to fifteen guns.

On February 22, 2001, Demetra filed a motion for a temporary hearing asking the court to award her support and maintenance, custody of the child, and use and possession of the marital home. She also asked the court to order Mark to make the mortgage payments on the marital home and provide her with a car because the parties' 1995 Cadillac was recently repossessed.

Mark filed his answer in which he agreed to temporarily provide support and maintenance to Demetra. He also agreed to Demetra's having temporary custody of the child and use and possession of the home. However, Mark contended that he could not financially afford to make the mortgage payments on the marital home. He stated that the mortgage was scheduled for foreclosure on March 12, 2001. He asserted that he had asked Demetra on several occasions to consent to selling the property, but that she had refused. He requested the court to order the sale of the marital home. Mark also maintained that he could not afford to provide her with an automobile. He claimed that Demetra had been provided with an automobile from her deceased father's estate.

---

[1]The facts of the case sub judice are taken verbatim from the previous opinion handed down by the Court of Appeals.

The court entered a temporary order on March 12, 2001, awarding Demetra temporary custody of the child, and granting her a separate maintenance award of $600 per month and use of the marital home. The chancellor directed the parties to execute long-term financing on the marital residence. The chancellor also ordered the parties to sell the eight acres of land surrounding their residence to Mark's parents to obtain funds to pay the remaining balance on the Cadillac.

At trial on October 1, 2001, Mark announced that he would not pursue his complaint for divorce and would agree to provide Demetra with separate maintenance. The chancellor then made the following ruling: due to the maintenance and costs associated with the marital home, the parties were to sell it. The sale was to be subject to the court's confirmation. The net proceeds from the sale were to be placed in a joint account and used for the purchase of a more economical marital residence.

Additionally, the court awarded Demetra primary custody of the child and granted her $600 per month in separate maintenance. The chancellor also ordered Mark to pay the monthly house note, pay all taxes and insurance relative to the marital home, pay the child's private school tuition and provide health insurance for Demetra and the child.

*Myers v. Myers*, No. 2002-CA-00326-COA, 2003 WL 21384900, *1-2 (Miss. Ct. App. 2003).

¶2.     Demetra and Mark both appealed the judgment of the chancellor. The Court of Appeals held that the chancellor's ruling regarding the sale of the marital home was "not within the spirit of the common law remedy of separate maintenance." *Id.* at *2. The Court of Appeals determined that partitioning a martial home discouraged a couple's reuniting which was contrary to public policy. *Id. See also* **Whitman v. Whitman**, 206 Miss. 838, 844, 41 So. 2d 22, 25 (1949); **Wilbourne v. Wilbourne**, 748 So. 2d 184 (¶9) (Miss. Ct. App. 1999); Finding that no party requested that the marital home be partitioned, the Court of Appeals found that the judgment of the chancellor "was more permanent than necessary." **Myers**, 2003 WL 21384900 at *3. Therefore, the Court of Appeals reversed the judgment of the chancellor and remanded the case for further proceedings. The Court of Appeals affirmed the award of separate maintenance.

¶3. On December 30, 2003, Mark petitioned this Court for certiorari on the sole issue of whether the chancellor had the authority to partition the marital home.

## DISCUSSION

¶4. "This Court will not disturb the chancellor's opinion when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *Holloman v. Holloman*, 691 So.2d 897, 898 (Miss. 1996) (citations omitted).

¶5. In *Bowen v. Bowen*, 688 So. 2d 1374, 1383 (Miss. 1997), this Court held that in separate maintenance orders, chancellors may only order the partition of real property upon the petition of one of the parties. In *Bowen*, this Court found that neither party requested that the marital home be partitioned; therefore, the order of partition was deleted from the chancellor's judgment. *Id.*

¶6. On May 24, 2000, Mark filed a Complaint for Divorce against his wife, Demetra. In his complaint, Mark specifically requested that he be granted exclusive use and possession of the marital home and that Demetra's "equity in said marital home be frozen until the minor child reaches the age of 21 years at which time the marital home may either be sold to a third party or one of the parties hereto can purchase the other's equity in said marital home." Another request was made on March 2, 2001, by Mark in response to Demetra's Motion for Temporary Hearing. In his response, Mark informed the chancellor of the financial difficulties the marital home had placed on him and Demetra. The financial difficulties were so apparent that a mortgage foreclosure was scheduled for later that same month. Mark stated that he attempted to obtain Demetra's cooperation in selling the marital home, but she refused. Therefore, Mark requested the chancellor to "order that the marital home be offered for sale on the open market for a fair market value."

4

This request did not contain the contingency that the partition occur after the minor child reached the age of majority.

¶7.     It is clear from the record that Mark, a party to the proceedings, requested that the chancellor partition the marital home. Finding that the marital home had become too great of a financial burden for the parties, the chancellor, in his discretion, ordered that the marital home be sold and that net proceeds from the sale be used to purchase a new marital home which would be jointly titled in the names of both parties. Therefore, the Court of Appeals erred in holding that no such request had been made to the chancellor by either party to partition the marital home.

## CONCLUSION

¶8.     Finding that the chancellor had the authority to partition the martial home upon the request of one of the parties, we affirm in part and reverse in part the judgment of the Court of Appeals and reinstate and affirm in toto the judgment of the Chancery Court of the Second Judicial District of Bolivar County.

¶9.     **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART, AND THE JUDGMENT OF THE CHANCERY COURT OF THE SECOND JUDICIAL DISTRICT OF BOLIVAR COUNTY IS REINSTATED AND AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., DICKINSON AND RANDOLPH, JJ., CONCUR. EASLEY, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. DIAZ AND GRAVES, JJ., NOT PARTICIPATING.**

5